UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HENRY JOHNSON,

       Petitioner,

    v.

        CASE NO. 2:11-CV-11674
        CHIEF JUDGE GERALD E. ROSEN
        MAGISTRATE JUDGE PAUL J. KOMIVES

MICHIGAN PAROLE BOARD,

       Respondent.[1]

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.    *Plea Validity Claims (Claims I, III-V, and VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    *Competency (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    *Lack of Factual Basis (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        3.    *Involuntary Plea (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        4.    *Illusory Plea (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    E.    *Withdrawal/Innocence (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    F.    *Ineffective Assistance of Counsel (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

\*      \*      \*      \*      \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

_____

[1]By Order entered this date, the Michigan Parole Board has been substituted in place of Debra Scutt as the proper respondent in this action.

II.    REPORT:

A.    *Procedural History*

1.    Petitioner David Henry Johnson is a former state prisoner, currently on parole.

2.    On February 8, 2006, petitioner was convicted of first degree home invasion, MICH. COMP. LAWS § 750.110a; carrying a concealed weapon with unlawful intent, MICH. COMP. LAWS § 750.226; assault with a dangerous weapon, MICH. COMP. LAWS § 750.82; possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b; and bribing, intimidating, or interfering with a witness, MICH. COMP. LAWS § 750.122(7)(b), pursuant to his no contest plea in the Tuscola County Circuit Court.  On April 13, 2006, he was sentenced to concurrent terms of 4-20 years' imprisonment on the home invasion conviction, 2-5 years' imprisonment on the carrying a weapon conviction, 2-4 years' imprisonment on the assault conviction, and 1½-10 years' imprisonment on the witness intimidation conviction, all consecutive to a mandatory term of two years' imprisonment on the felony-firearm conviction.

3.    Petitioner, through counsel, filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claim:

> DID THE TRIAL COURT ERR IN NOT ADVISING DEFENDANT-APPELLANT OF HIS APPELLATE RIGHTS AT SENTENCING IN VIOLATION OF MCR 6.425(F)(2) AND IN DELAYING THE APPOINTMENT OF APPELLATE COUNSEL IN VIOLATION OF MCR 6.425(G)(1)(a) THUS DENYING DEFENDANT-APPELLANT THE ABILITY TO FILE A TIMELY MOTION TO WITHDRAW PLEA?

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented."  *People v. Johnson*, No. 288460 (Mich. Ct. App. Dec. 1, 2008).

4.    Petitioner sought leave to appeal this issue to the Michigan Supreme Court.  In lieu of granting petitioner's application, the Supreme Court remanded the matter to the trial court for the

2

appointment of appellate counsel, ordering that counsel would have the opportunity to file an application for leave to appeal in the court of appeals and any appropriate postconviction motions in the trial court. *See People v. Johnson*, 485 Mich. 915, 773 N.W.2d 263 (2009).

5.     Petitioner was appointed counsel and, through counsel, filed a motion to withdraw his plea and for an evidentiary hearing, raising the following claims, as set forth in his subsequent brief to the Michigan Court of Appeals[2]:

I.      FAILURE OF TRIAL COURT TO HOLD A HEARING TO DETERMINE DEFENDANT-APPELLANT'S COMPETENCY TO PROCEED TO TRIAL AND/OR TO ENTER PLEAS OF NO CONTEST CONSTITUTES REVERSIBLE ERROR WHERE DEFENDANT WAS UNDER THE INFLUENCE OF A PLETHORA OF PSYCHOTROPIC DRUGS AT THE TIME OF HIS NO CONTEST PLEA.

II.     DEFENSE COUNSEL'S FAILURE TO REQUEST A COMPETENCY HEARING BEFORE DEFENDANT-APPELLANT'S PLEA CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

III.    THE NO CONTEST PLEA TO HOME INVASION 1ST DEGREE IS INVALID BECAUSE IT IS NOT SUPPORTED BY AN ADEQUATE FACTUAL BASIS AND IS THEREFORE IN VIOLATION OF DEFENDANT'S CONSTITUTIONAL FIFTH AND SIXTH AMENDMENT RIGHTS.

IV.     THE NO CONTEST PLEA TO INTIMIDATING WITNESS IS INVALID BECAUSE IT IS NOT SUPPORTED BY AN ADEQUATE FACTUAL BASIS AND IS THEREFORE IN VIOLATION OF DEFENDANT'S CONSTITUTIONAL FIFTH AND SIXTH AMENDMENT RIGHTS.

V.      THE GUILTY PLEA IS INVALID BECAUSE IT IS NOT KNOWING AND VOLUNTARY, IN VIOLATION OF DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS, US CONST, AMS V, VI; CONST 1963, ART 1, §§ 17, 20.

VI.     DEFENDANT-APPELLANT SHOULD BE ALLOWED TO WITHDRAW HIS PLEA BASED ON HIS CLAIM OF ACTUAL INNOCENCE.

---

[2]Respondent contends that the fourth claim listed below was not raised in the motion for new trial, but only on appeal.

VII.   DEFENDANT-APPELLANT SHOULD BE ALLOWED TO WITHDRAW
HIS PLEA ON THE BASIS THAT HIS PLEA DEAL WAS ILLUSORY.

The trial court conducted an evidentiary hearing, at which petitioner's trial counsel and petitioner's daughter testified.  After the hearing, the trial court denied petitioner's motion.  *See People v. Johnson*, No. 25-9572-FC (Tuscola County, Mich., Cir. Ct. May 26, 2006) [hereinafter "Trial Ct. op."].  The Michigan Court of Appeals subsequently denied petitioner's delayed application for leave to appeal in a standard order, "for lack of merit in the grounds presented."  *People v. Johnson*, No. 299101 (Mich. Ct. App. Sept. 23, 2010).  The Michigan Supreme court denied petitioner's application for leave to appeal from that decision in a standard order.  *See People v. Johnson*, No. 488 Mich. 1047, 794 N.W.2d 608 (2011).

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 18, 2011.  As grounds for the writ of habeas corpus, he raises the seven claims that he raised in the state courts.

7.     Respondent filed its answer on October 24, 2011.   Respondent contends that petitioner's fourth claim is unexhausted, and that all of petitioner's claims are without merit.

8.     Petitioner filed a reply to respondent's answer on December 5, 2011.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner entered his no contest plea in the middle of trial.  The evidence adduced at trial prior to petitioner's plea and the taking of petitioner's plea is accurately summarized in respondent's answer:

Kimberly Johnson was married to Petitioner, but the two were separated. Kimberly lived with the children they had in common.  On August 13, 2005, just before 2 a.m., Petitioner came to Kimberly's home asking to borrow twenty dollars. Kimberly gave him the money, and he left.  Some time after 7 that same morning, Petitioner returned, asking to borrow more money.  Kimberly declined to give him any more money, and Petitioner said, "Don't make me go down like this," or words to that

4

effect.  Petitioner left, and returned carrying a shotgun.  Petitioner told Kimberly he was going to kill himself.  Kimberly told Petitioner to go ahead.  Petitioner told Kimberly, "Well then, if it doesn't bother you, that I kill myself, then I'm going to take you first and then me after that."  At this point, Petitioner was pointing the gun at Kimberly.  According to Kimberly, "then he tried to do something on the top of the gun.  And when he did that, then the barrel fell," and a shell fell out of the shotgun.  Petitioner, apparently unaware that the shell had fallen out of the shotgun, pulled the trigger repeatedly, becoming frustrated in his attempts to shoot Kimberly.

Kimberly picked up the dropped shell, and their daughter C.J. came into the room and took the gun away from Petitioner and took it into the kitchen.  Their son D.J. came into the room at this time as well, and Kimberly and D.J. tried to prevent Petitioner from getting into the kitchen to get the gun.  As Petitioner tried to get into the kitchen, he attacked Kimberly; in her words, he "smacked me up beside the head and like hit me into the wall."  Petitioner then left.

After he was incarcerated, Petitioner called Kimberly and their children. According to Kimberly's statement to the Caro Police Department,

> David Johnson has called our home 3 or 4 times with us answering [twice] that I know of.  The first time was when he was in Caro and the second, third and fourth he was at Health Source.  He told me I was all wrong about what happened.  That I know in my heart he wouldn't hurt me.  I really need to think about what I tell the police and what kind of trouble I've gotten him into.  I'm suppose[d] to say I might have been mistaken on his intentions is what he told me to say.

Petitioner was charged with one count of assault with intent to commit murder (AWIM), one count of carrying a dangerous weapon with unlawful intent, one count of felony-firearm, one count of assault with a dangerous weapon, four counts of bribing, intimidating, or interfering with a witness, as well as two misdemeanor counts.

After trial began, Petitioner offered a no contest plea pursuant to an agreement under which the AWIM charge would be reduced to first-degree home invasion, three of the bribing/intimidating charges would be dismissed, and Petitioner's minimum sentence would be no greater than six years, including any consecutive sentencing.

At the plea hearing, the trial court engaged in a colloquy with Petitioner in which the court informed Petitioner of the charges and the maximum penalties. Petitioner, under oath, told the trial court that he understood his trial rights, including right to a trial by jury, presumption of innocence, burden of prosecution to prove guilt beyond a reasonable doubt, right to confrontation and cross-examination of witnesses, right to testify at trial, right to refuse to testify at trial, and right to compel witnesses to testify on his behalf.  Petitioner told the trial court that he understood that he had the right to consult with counsel before entering his plea, and that he had consulted with counsel, and that counsel had advised him of his rights he would be waiving by entering a plea, and that he understood that he would be giving up these rights, as well as the right to appeal to the Michigan Court of Appeals, the right to a free transcript, and the right to court-appointed appellate counsel.

Petitioner testified that nobody had threatened him or promised him anything

5

other than the plea agreement in order to get him to plead. The trial court placed the terms of the agreement on the record, and Petitioner testified that they conformed to his understanding. Petitioner then testified that he was pleading no contest freely, voluntarily, understandingly, and intentionally. Using Kimberly Johnson's statement to the Caro Police Department as a factual basis to the charge of bribing, intimidating, or interfering with a witness, and using her trial testimony as a factual basis to the other charges, the court accepted Petitioner's plea. Petitioner was sentenced in conformity with the plea agreement.

Answer, at 3-5 (citations to trial and plea transcripts omitted).

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

6

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as

opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).[3]

---

[3]The deferential standard of review set forth in § 2254(d) applies even though the Michigan Court of Appeals did not issue a reasoned decision.  As the Supreme Court has explained, an unexplained summary order by a state court is presumed to be a rejection of the claims on the merits, and the petitioner bears the burden of demonstrating that the rejection was on some basis other than the merits.  *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  Here, there is no indication that the Michigan Court of Appeals denied petitioner's application for leave to appeal on any basis other than

D.      *Plea Validity Claims (Claims I, III-V, and VII)*

The bulk of petitioner's claims challenge the validity of his plea.  In Claim I, he contends that he was not competent to stand trial or to enter into his plea.  In Claims III and IV, he argues that the court failed to establish a factual basis for his plea.  In Claim V, he contends that his plea was involuntary.  Finally, in Claim VII, petitioner argues that his plea was illusory.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Competency (Claim I)*

Due process requires that, for a plea to be valid, it must be entered by a defendant who is competent to enter the plea.  A defendant is competent to stand trial and to enter a plea if he "has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 326 U.S. 402, 402 (1960) (per curiam)).  When there is reasonable cause to believe that the defendant is incompetent, the court must inquire into defendant's competency before accepting a plea of guilty.  *See Drope v. Missouri*, 420 U.S. 162, 173 (1975); *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966).

As explained by another Judge of this Court,

Competency claims can raise issues of both substantive and procedural due

---

the merits.  On the contrary, the court of appeals explicitly stated that its denial was "for lack of merit in the grounds presented," and the Michigan Court of Appeals has repeatedly held a denial on this basis is "a determination on the merits of the case."  *Attorney Gen'l ex rel. Dep't of Treasury v. Great Lakes Real Estate Investment Trust*, 77 Mich. App. 1, 3, 257 N.W.2d 248, 249 (1977); *accord Hoye v. DMC/WSU*, No. 285780, 2010 WL 334833, at *1 (Mich. Ct. App. Jan. 28, 2010) (per curiam); *McCabe v. Miller & Assocs., L.L.P.*, No. 275498, 2007 WL 2935032, at *3 (Mich. Ct. App. Oct. 9, 2007) (per curiam); *People v. Douglas*, 122 Mich. App. 526, 530, 332 N.W.2d 521, 523 (1983).  Accordingly, the Michigan Court of Appeals's denial of petitioner's application for leave to appeal "for lack of merit in the grounds presented" constitutes an adjudication on the merits for purposes of § 2254(d).  *See Snyder v. Lafler*, No. 09-13773, 2011 WL 309056, at *3 (E.D. Mich. Jan. 27, 2011) (Roberts, J.).

> process. A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue. To prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts which raised a "bona fide doubt" regarding petitioner's competency to stand trial. *Walker v. Attorney General for the State of Oklahoma*, 167 F.3d 1339, 1343 (10th Cir.1999) (internal citations omitted). A petitioner can make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. A petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence. *Id.* at 1344. To succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a "real, substantial, and legitimate doubt" as to his or her competency to stand trial. *Walker*, 167 F.3d at 1347.

*Hastings v. Yukins*, 194 F. Supp. 2d 659, 670-71 (E.D. Mich. 2002) (Cleland, J.). Here, petitioner can succeed on neither a procedural nor substantive competency claim.

With respect to a procedural competency claim, a hearing must be held where a reasonable judge, faced with the facts before the trial judge, would have a "bona fide doubt" about the defendant's competence. *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004). The focus of the inquiry is "on what the trial court did in light of what it knew at the time of the trial or plea hearing." *Tiller v. Esposito*, 911 F.2d 575, 576 (11th Cir. 1990). Factors giving rise to a bona fide doubt may include prior medical opinions on his competence to stand trial or plead guilty, his demeanor in court, and his irrational behavior. *See Drope*, 420 U.S. at 180. Here, there were no circumstances present which would have raised in the mind of the trial judge a bona fide doubt about petitioner's competence to enter a plea. Although petitioner had attempted to take his own life and had received psychiatric evaluation based on that, nothing in petitioner's suicide attempt indicated by itself an inability to comprehend the proceedings or the plea, or to assist counsel. Indeed, as the trial court observed, petitioner "was released with prescribed medications once it was determined he was no longer a danger to himself," Trial Ct. op., at 3, suggesting that the treatment petitioner received was adequate to control his psychological problems. Counsel testified at the evidentiary hearing that he

10

discussed the case with petitioner, and petitioner appeared to understand the charges, the proceedings, the plea deal, and his rights, and that petitioner was able to assist in his defense. Hr'g Tr., Def.'s Mot. to Withdraw Plea, dated 3/15/10, at 10-16. Petitioner did not appear to counsel to be incapable of understanding the proceedings or assisting in the defense as a result of a mental condition. *See id.* at 18. The record of the plea hearing establishes that petitioner understood what was being told him, had the ability to consult with counsel, and responded appropriately to the trial judge's inquiries. The record does not reveal any bizarre or otherwise inappropriate behavior, or any difficulty on the part of petitioner in understanding the proceedings and his plea. Further, "no person present at the . . . plea proceeding–not the trial judge, not the prosecutor, and not [petitioner's] counsel–indicated that [petitioner's] competence should be doubted." *Weisberg v. Minnesota*, 29 F.3d 1271, 1276 (8th Cir. 1994); *see also*, *Williams v. Coughlin*, 664 F. Supp. 665, 668 (E.D.N.Y. 1987).

Petitioner's reliance on the pre-plea evaluations of his mental condition does not compel a contrary result. First, "[t]here is no indication that the Judge [prior to the plea] was even aware of any of these reports, and therefore no indication of how these reports could be the basis for a *sua sponte* order." *Williams*, 664 F. Supp. at 667; *see also*, *Payton*, 195 Fed. Appx. at 585. Further, even if the judge had been aware of the reports, they do not raise a bona fide doubt about petitioner's competence to enter a guilty plea. Petitioner does not contend that any of the evaluators determined that he was incompetent to stand trial. Rather, as set forth by petitioner, the reports indicated only that petitioner may have been bipolar and suffered from suicidal ideation. These reports do not bear on petitioner's competence and would not, in themselves, raise a bona fide doubt about petitioner's competence. Thus, petitioner is not entitled to habeas relief on a procedural competency claim.

Nor has petitioner presented sufficient evidence to demonstrate entitlement to relief on a substantive competence claim. There is no doubt that petitioner attempted to commit suicide, and as

11

a result was placed on seven psychotropic medications.  However, nothing in the record supports petitioner's claim that the prescribed medications caused him to be unable to understand the proceedings or the plea, or to be unable to assist in his defense. "Not every manifestation of mental illness demonstrates incompetency to stand trial. Neither low intelligence, mental deficiency, nor the fact that a defendant has been treated with anti-psychotic drugs can automatically be equated with incompetence." *Hastings*, 194 F. Supp. 2d at 671-72 (citing *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000); *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir.1995)).  Petitioner has not presented, either here or in the state courts, any evidence to support his claim that he was suffering from the effects of a mental disorder at the time of his plea which rendered him incompetent to enter his plea. In short,

> in the present case, a review of petitioner's guilty plea transcript shows that []he was "lucid and articulate" at the time that []he entered her plea of guilty and was responsive to the trial court's questions. Petitioner has presented no evidence that []he was not in possession of h[is] mental faculties at the time that []he entered h[is] plea of guilty. Thus, h[is] "after-the-fact" incompetency claim is without merit. *See United States v. Calvin*, 20 Fed. Appx. 452, 453 (6th Cir.2001).

*Hastings*, 194 F. Supp. 2d at 672.[4]  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.    *Lack of Factual Basis (Claims III & IV)*

Petitioner next contends that his pleas were invalid because the trial court failed to establish

---

[4]For the same reasons that petitioner cannot establish a procedural competency claim based on the trial court's failure to hold a competency hearing, petitioner cannot establish entitlement to an evidentiary hearing to develop facts in support of his substantive competency claim. *See Theriot*, 15 F.3d at 315; *see also, Williams*, 664 F. Supp. at 669; *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002) (Friedman, J.) ( internal quotation omitted) ("In a habeas proceeding, a petitioner is entitled to an evidentiary hearing on the issue of competency to stand trial if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court.").  Here, as explained above, petitioner has presented nothing which creates "a real and substantial doubt as to his competency," and thus he is not entitled to an evidentiary hearing.

an adequate factual basis for either the home invasion or witness intimidation pleas.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

Petitioner also contends that the trial court failed to establish an adequate factual basis for the plea with respect to any of the charges for which he was convicted.  This claim is without merit. "[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). "Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable claims under § 2254." *Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991). Because the writ of habeas corpus exists only to correct errors of federal law, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review. *See United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Circ. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Coddington v. Langley*, 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002) (Tarnow, J.).  This is particularly true with respect to a plea of *nolo contendere*:

> Although the legal effect of a nolo plea and a guilty plea are identical, it does not follow that the procedural requirements for accepting the two pleas are the same. Indeed, the purpose of the plea of nolo contendere, to allow a defendant to enter a plea without admitting guilt, is wholly inconsistent with the reason for requiring a factual basis for a guilty plea. The validity of a guilty plea is premised on the voluntariness and understanding of the plea. Although someone entering a plea of nolo contendere should, of course, intelligently enter the plea, public interest in assuring that a factual basis exists for the plea is not as great since the defendant is not admitting guilt by entering a nolo plea.

*Gloria v. Miller*, 658 F. Supp. 229, 234 (W.D. Okla. 1987).

The lack of a factual basis is implicit in the very nature of a *nolo contendere* plea, and even more so here, where petitioner entered his plea pursuant to *People v. Lafay*, 182 Mich. App. 528, 452 N.W.2d 852 (1990).  Under *Lafay*, a defendant may properly plead guilty (or no contest) to a charge

carrying a lesser maximum sentence as part of a plea deal, regardless of whether the offense pleaded to is an included offense, so long as a factual basis can be established for the original, greater charge. *See id.* at 532, 452 N.W.2d at 854; *see also*, MICH. CT. R. 6.302(D) (emphasis added) (before accepting a guilty or no contest plea, the court must establish "support for a finding that the defendant is guilty of the offense charged *or* the offense to which the defendant is pleading guilty."). Such a plea poses no constitutional problem. In *North Carolina v. Alford*, 400 U.S. 25 (1970), the Court held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *See id.* at 37-38. The Court explained that "[i]mplicit in the nolo contendere cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." *Id.* at 36. Thus, "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37. In short, the lack of a factual basis does not provide grounds for habeas relief. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

  3.  *Involuntary Plea (Claim V)*

  Petitioner next claims that his plea was involuntary because he was informed by his attorney that the maximum sentence would be no more than 7 years' imprisonment, his children were used by the prosecution to manipulate him into accepting the plea, and the trial judge added his own terms to the plea bargain.[5] The Court should conclude that petitioner is not entitled to habeas relief on this

---

   [5]Petitioner also contends that his plea was involuntary because he was under the influence of psychotropic drugs. This claim is subsumed by petitioner's competence claim.

claim.

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted). Petitioner does not contend that he was coerced into pleading guilty or that the decision was not his own, nor could he given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). As a number of Judges of this Court have observed:

When a petitioner brings a federal habeas petition challenging his plea of guilty (or no contest), the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. . . . Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid.

*Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005) (Gadola, J.) (citations omitted);

*accord Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002) (Friedman, J.); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002) (Cleland, J.); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 586 (E.D. Mich. 2001) (Hood, J.); *Myers v. Straub*, 159 F. Supp. 2d 621, 626 (E.D. Mich.2001) (Steeh, J.). In short where, as here, "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted). Rather, petitioner raises specific incidents which he contends rendered his plea involuntary or unknowing.

First, petitioner contends that his plea was involuntary because his attorney informed him that the maximum sentence would not exceed 7 years (or 6 years if the court accepted the *Cobbs* agreement).[6] The record of the plea belies this claim. In explaining the terms of the deal, petitioner's counsel stated that there "would be a total sentence of six to 20 years on all the cases together." Plea Tr., at 5. The prosecutor confirmed this understanding, stating that "the offer from the prosecutor's office has been seven years cap *on the minimum*, however I would recognize the Court has agreed to a six year *Cobbs* agreement." *Id*. at 5-6 (emphasis added). The trial judge added that he had indicated at the prior *Cobbs* hearing that he "could live with a six year *minimum* on this sentence." *Id*. at 6

---

[6]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), permits a defendant to plead guilty pursuant to the trial court's initial evaluation as to the appropriate sentence, subject to the defendant's right to withdraw his plea if the actual sentence imposed is more severe.

(emphasis added). The trial court informed petitioner of the maximum possible sentences, including the 20 year maximum on the home invasion charge, *see id*. at 7, and petitioner explicitly stated that he understood the maximum sentence was 20 years, *see id*. at 8. Petitioner denied that anyone had promised him anything in exchange for his plea other than the agreement on the record. *See id*. at 12. The court and the attorneys again discussed the fact that the total term on the minimum sentence would be no more than 6 years, and petitioner indicated that he understood. *See id*. at 13-14. Thus, the record establishes that petitioner was fully informed that the 6-year cap applied to the minimum term of imprisonment.

Petitioner also contends that his plea was involuntary because the prosecutor used his children to manipulate him into accepting the plea. Again, the record belies this contention. At the evidentiary hearing petitioner's daughter, who was also one of the victims, testified that she and her siblings met with the prosecutor and discussed plea offers. They then met with petitioner to discuss the options available to petitioner. *See* Hr'g Tr., at 38-39. Nothing in this testimony, however establishes that the prosecutor attempted to manipulate petitioner's children, or through them overbore his will so that the plea was not voluntary. Petitioner's daughter testified simply that they discussed with the prosecutor petitioner's options. "[E]ven strong urging by those who have an accused's welfare at heart, based on the strength of the State's case and the weakness of the defense, does not constitute undue coercion." *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir. 1976); *see also*, *United States v. Grzybek*, 283 Fed. Appx. 843, 846 (2d Cir. 2008) (absent other evidence of coercion, alleged pressure from family members insufficient to show plea was involuntary); *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991) (internal quotation omitted) ("Simply because the defendant was subjected to pressure from sources not associated with the state or prosecutors does not mean that the defendant's guilty plea was necessarily involuntary. It is not an uncommon occurrence that a criminal defendant

17

is pressured to some extent by co-defendants, friends, and relatives. These types of influences are inevitable and unavoidable.").

Finally, petitioner contends that his plea was involuntary because the trial court added a term to the agreement. During the plea colloquy, the trial court advised petitioner that "by accepting this plea you're waiving and giving up your right to seek an appeal to the court of appeals, and the right to receive a free transcript and a court appointed attorney to perfect an appeal to the court of appeals." Plea Tr., at 11. This was not a term of the agreement. However, any error by the trial court was remedied by the Michigan Supreme Court. In dealing with this issue, the court explained:

> In the course of accepting the defendant's nolo contendere plea, the trial judge added a term not agreed to by the parties. In advising the defendant of the trial rights that he would be waiving by pleading no contest, the trial judge asked the defendant if he understood that by pleading no contest he would be giving up the rights to seek an appeal to the Court of Appeals, to receive a free transcript, and to court-appointed counsel to perfect an appeal. The inquiry was not preceded by any statement that the defendant had the right to court-appointed appellate counsel under *Halbert [v. Michigan*, 545 U.S. 605 (2005)] or under the then recently amended court rules. When asked by the trial judge whether he understood and agreed to this waiver, the defendant indicated that he did. At the time of the defendant's plea and sentence, he was entitled to those appellate rights. *See Halbert*, and MCR 6.425(F) and (G). After twice denying the defendant's subsequent requests for the appointment of appellate counsel, the trial judge filed an order granting the appointment over two years after sentence was imposed. This delay in appointing counsel prevented the defendant from filing any timely, appropriate postconviction motions and thereby preserving any substantive issues.

*Johnson*, 485 Mich. at 915, 773 N.W.2d at 263. To remedy this problem, the Michigan Supreme Court remanded the matter to the trial court for the appointment of counsel, and expressly provided that:

> Appointed counsel may file an application for leave to appeal to the Court of Appeals, and/or any appropriate postconviction motions in the trial court, in accordance with MCR 7.205(F), except that the time for filing shall be determined based on the date of the circuit court's order appointing counsel. Because the defendant was sentenced and should have been appointed counsel, after January 1, 2006, counsel shall have six months from the date of the filing of the transcript to file any post-conviction motions.

18

*Id.* Thus, the Michigan Supreme Court effectively excised the term of the plea added by the trial judge, and granted petitioner a new period of time in which to file post-plea motions and an application for leave to appeal to the Michigan Court of Appeals with the assistance of counsel. Petitioner has not explained how the additional term added by the trial court rendered the remainder of his plea involuntary, nor how he was prejudiced in light of the fact that the Michigan Supreme Court corrected the error. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      4.     *Illusory Plea (Claim VII)*

Petitioner next contends that his plea was illusory because it contained a term that was unenforceable. The Court should reject this claim. An illusory plea bargain is one which offers no real benefit to the defendant. *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000). A plea is not illusory where the defendant "received a real, tangible benefit in consideration for the plea." *Jones v. Prelesnik*, No. 2:08–CV–14126, 2011 WL 1429206, at * (E.D. Mich. Apr. 14, 2011) (Zatkoff, J.) (citing *Daniel v. Overton*, 845 F. Supp. 1170, 1174 (E.D. Mich.1994)). Here, petitioner received a substantial benefit for his guilty plea. In exchange for a sentence totaling only 6 years on the minimum, petitioner received a dismissal of several serious charges, including a charge (AWIM) that carried a potential maximum sentence of life imprisonment. *See* MICH. COMP. LAWS § 750.83. Petitioner contends specifically that the prosecutor's promise that he be housed in the Lapeer Correctional Facility was illusory because the prosecutor had no power to determine his place of imprisonment. However, the record establishes that the prosecutor made no such promise to petitioner. Rather, as explained by defense counsel, the agreement provided only that "the prosecutor . . . is willing to recommend . . . that Mr. Johnson be housed at the medium security facility at Lapeer in order to facilitate visitation with his family." Plea Tr., at 5; *see also*, Sentence Tr., at 6. And in fact

19

at sentencing the court recommended, in accordance with the agreement, that petitioner be housed in Lapeer County. *See id.* at 16-17. Thus, petitioner received a substantial benefit by pleading no contest, and he was fully aware that the portion of the agreement regarding the place of confinement would only be a recommendation. Accordingly, petitioner cannot show that his plea bargain was illusory.

E.      *Withdrawal/Innocence (Claim VI)*

Petitioner next contends that he should be permitted to withdraw his plea because he is innocent. This claim is not cognizable on habeas review. A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus petitioner's assertion of innocence, standing alone, provides no basis for habeas relief.

20

Nor does petitioner's assertion of innocence after the plea was entered render involuntary his otherwise valid plea.  As another court observed long ago, there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea involuntary as a matter of constitutional law." *Hansen v. Mathews*, 296 F. Supp. 1398, 1331 (E.D. Wis. 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970).  Although *Hansen* was decided nearly forty years ago, this observation holds true today.  It is well established that "factual guilt or innocence . . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 n.28 (E.D. Pa. 1975), *aff'd*, 538 F.2d 322 (3d Cir. 1976); *see also*, *Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least.").  Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime.  *See  North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).  "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, a fortiori a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

Nor can petitioner show a denial of his constitutional rights by the trial court's failure to allow him to withdraw his plea.  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea.  *See Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29,

1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169 (2d Cir. 1979). Thus, the trial court's failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

Further, even under the standard applicable to pleas in federal court under FED. R. CRIM. P. 11, petitioner cannot show that he would be entitled to withdrawal of his plea. Under this standard, a claim of innocence alone does not entitle a defendant to withdraw his plea; rather, withdrawal is permitted only in the "most compelling of circumstances indicating the innocence of the defendant." *United States v. Tolson*, 372 F. Supp. 2d 1, 24 (D.D.C. 2005), *aff'd*, 264 Fed. Appx. 2 (D.C. Cir. Jan. 25, 2008); *see also*, *United States v. Robinson*, 498 F. Supp. 2d 328, 331-32 (D.D.C. 2007). To be entitled to withdrawal, a "defendant must come forward with some evidentiary support for his innocence." *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 595 (E.D. Va. 2004); *see also*, *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). Here, petitioner does not have any evidentiary support for his claim of innocence other than his own denial of guilt and his assertion of what the evidence at trial would have shown had the trial continued. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Ineffective Assistance of Counsel (Claim II)*

Finally, petitioner contends that his counsel was ineffective for failing to seek a competency hearing. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To

establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828.

      2.    *Analysis*

23

Counsel's failure to request a competency hearing may amount to ineffective assistance "provided there are sufficient indicia of incompetence to give objective reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001). Here, petitioner cannot show that counsel was ineffective for failing to request a competency hearing. As explained above, although it is clear that petitioner suffered from psychological problems, petitioner has not shown that he suffered from a mental illness that rendered him incompetent to stand trial or enter his plea. Nothing in the record establishes that counsel was aware that petitioner suffered from any mental illness which prevented him from understanding the proceedings and assisting in his defense; counsel testified without contradiction at the evidentiary hearing that petitioner was able to comprehend the proceedings and assist in his defense, and the record of the plea colloquy shows that petitioner understand the nature of the proceedings. In short, petitioner has presented nothing to show either that counsel should have been aware of the need for a competency hearing, or that he was in fact incompetent to understand the nature of the proceedings and assist in his defense. Thus, petitioner has failed to show that counsel was ineffective for failing to request a competency examination. *See Kalasho v. Cason*, 77 Fed. Appx. 774, 776 (6th Cir. 2003) (counsel not ineffective where petitioner "appeared to have participated competently in his defense"); *Walker v. Gibson*, 228 F.3d 1217, 1231 (10th Cir. 2000) (counsel not ineffective where petitioner presented evidence that he suffered from mental disorder where nothing in the record showed that petitioner was unable to consult with counsel or understand the proceedings); *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996) (counsel not ineffective where record showed that petitioner was able to assist in his defense); *Etoria v. Bennett*, 292 F. Supp. 2d 456, 472-73 (E.D.N.Y. 2003) (counsel not ineffective notwithstanding petitioner's mental illness

24

where petitioner was able to understand the proceedings and assist in his defense, and nothing in the record showed that counsel should have been aware of petitioner's mental disorder).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues

are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.   *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, the record fails to disclose any basis on which the court or counsel should have had a bona fide doubt regarding petitioner's competence, nor has petitioner shown that he was in fact incompetent. Thus, the resolution of petitioner's competency and related ineffective assistance claim is not reasonably debatable. Further, the record of the plea colloquy establishes that petitioner was fully informed of the plea agreement, that the agreement was not illusory, and that petitioner knowingly and voluntarily entered his plea. Thus, the resolution of petitioner's voluntariness and illusory plea claims is not reasonably debatable. Finally, because it is clear that petitioner's factual basis and innocence claims are not cognizable on habeas review, the resolution of these claims is not reasonably

26

debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 12/6/12

```
┌─────────────────────────────────────────┐
│ The undersigned certifies that a copy of │
│ the foregoing order was served on the    │
│ attorneys of record and   by electronic  │
│ means or U.S. Mail on November 6, 2012.  │
│                                          │
│                    s/Eddrey Butts        │
│                    Case Manager          │
└─────────────────────────────────────────┘
```

28